## UNITED STATES v. EDWARDS.*

Circuit Court of Appeals, Eighth Circuit.
December 17, 1927.

No. 7648.

1. **Appeal and error** ⊜➔846(5)—**In absence of request by plaintiff in error for findings and conclusions, facts can only be reviewed to ascertain whether finding is supported by substantial evidence.**

Where plaintiff in error did not request trial court to make any findings of fact or conclusions of law, facts can be reviewed on writ of error only for purpose of ascertaining whether there is substantial evidence to support the finding made.

2. **Appeal and error** ⊜➔265(1)—**If not excepted to, denial of motion for special findings could not be reviewed.**

Denial of motion for special findings could not be complained of on writ of error, if not excepted to.

3. **Army and navy** ⊜➔51½—**Statute waiving war risk insurance premiums of incompetent held inapplicable to incompetent, not rated as such by Veterans' Bureau (World War Veterans' Act, § 306 [38 USCA § 517]).**

World War Veterans' Act, § 306 (38 USCA § 517), authorizing Veterans' Bureau to waive premiums, so as to prevent lapsing of war risk insurance of those, among others, who, "while mentally incompetent and for whom no legal guardian * * * has been appointed, allowed or may allow their insurance to lapse while such rating is effective during the period for which they have been or hereafter may be so rated, or until a guardian has notified the bureau of his qualification, * * *" held not applicable to the case of an incompetent soldier not paying premiums after deserting from army, in absence of required rating by bureau, and District Court had no authority to determine his incompetency on ground of the existence of a "disagreement," within section 19 (38 USCA § 555), in view of War Risk Insurance Act, § 409 (42 Stat. 1526), superseded thereby.

4. **Statutes** ⊜➔217—**Court may refer to committee reports in construing statute.**

In construing a statute, court may refer to committee reports made when legislation was before Congress.

5. **Courts** ⊜➔37 (1, 3)—**Where court has general jurisdiction of subject-matter, lack of jurisdiction respecting particular case may be waived by want of timely objection, and invocation or submission to jurisdiction may estop denial of jurisdiction.**

Where the court has general jurisdiction of the subject-matter, a lack of jurisdiction of the particular case may be waived by failure to take timely and specific objections, or an invocation of or submission to the jurisdiction may raise an estoppel to deny such jurisdiction, and the parties may expressly or by their conduct waive objections to remedies pursued in courts having jurisdiction of the subject-matter.

*Rehearing denied March 6, 1928.

6. **Army and navy** ⊜➔51½—**Statement of government's counsel respecting submitting of question of deceased soldier's incompetency to Veterans' Bureau held to waive objection to failure to procure bureau's rating (World War Veterans' Act, § 306 [38 USCA § 517]).**

In action on war risk insurance policy of alleged incompetent deserter, defended on ground that policy had lapsed for nonpayment of premiums, statement by government's counsel at the trial that government, in submitting question of deceased soldier's competency to Veterans' Bureau, to determine whether policy lapsed under World War Veterans' Act, § 306 (38 USCA § 517), was willing to waive failure to procure a rating from the bureau, *held* to constitute a waiver of objection to failure to procure rating before or after suit was brought, and, since court had general jurisdiction of the parties and of the subject-matter, such waiver was binding on the government.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Kate Edwards against the United States. Judgment for plaintiff, and the United States brings error. Affirmed.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb., and C. L. Dawson, Atty. U. S. Veterans' Bureau, of Washington, D. C. (James C. Kinsler, U. S. Atty., and George A. Keyser, Asst. U. S. Atty., both of Omaha, Neb., William J. Froelich, Asst. U. S. Atty., of O'Neill, Neb., Philip M. Aitken, Asst. U. S. Atty., of Lincoln, Neb., and William Wolff Smith, Gen. Counsel U. S. Veterans' Bureau, of Washington, D. C., on the brief), for the United States.

J. J. Friedman, of Omaha, Neb., for defendant in error.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

VAN VALKENBURGH, Circuit Judge. This is a suit by defendant in error, widow of a deceased soldier, to recover upon a policy of war risk insurance. Polete Edwards, husband of defendant in error, became a private soldier in the army of the United States on July 17, 1918, and was sent to a training camp at Camp Dodge, Iowa. Shortly after his enlistment he applied for and received war risk insurance in the sum of $10,000, his wife being named as beneficiary. By the usual direction and agreement the premium for said insurance was to be deducted from the soldier's pay. December 23, 1918, Edwards absented himself without official leave and never thereafter returned to his military duty. He was recorded by the military authorities as a deserter as of January 21, 1919.

It appears from the record, and is found by the court, that prior to December 23, 1918 insurance premiums accruing were deducted from the pay of the said soldier; that default was made in the payment of premiums maturing January 21, 1919, and thereafter; and that there were no funds belonging to the said soldier, and set aside for him, in the hands of the United States from which the premium payments so defaulted could be made. Polete Edwards died November 14, 1920, and the trial court found that he was mentally incompetent from December 23, 1918, and continuously thereafter until his death; that no guardian was ever appointed for him; that because of such mental incompetency the policy of insurance did not lapse, but was in full force and effect at the time of his death. Judgment in favor of defendant in error followed accordingly.

As stated by counsel for plaintiff in error in their brief: "The principal question involved in this case is the right and authority of the court to determine independently the fact that the insured, Polete Edwards, was mentally incompetent on December 23, 1918, in the absence of the rating of the Veterans' Bureau making such a finding of mental incompetency, in order to find that the insured was entitled to a retroactive waiver of insurance premiums."

The court below held that it had that right under section 19 of the act (43 Stat. 1302 [38 USCA § 555]) and the provisions of section 306 of the World War Veterans' Act (43 Stat. 626 [38 USCA § 517]), which superseded section 409 of the War Risk Insurance Act (42 Stat. 1526).

[1, 2] The government also contends that the evidence was insufficient to support the judgment. This point may readily be disposed of. There was a stipulation waiving a jury. The court made findings of fact and conclusions of law. None were asked by plaintiff in error; therefore the facts can be reviewed only for the purpose of ascertaining whether there is substantial evidence to support the finding. Neither did counsel present to the court any requests in the nature of declarations of law. No exceptions of any nature were preserved. Wear v. Imperial Window Glass Co. (C. C. A. 8) 224 F. 60. And even denial of a motion for special findings could not be complained of, if not excepted to. Law v. United States, 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401. There was substantial evidence to support the judgment.

[3] The only question, then, is whether the court had jurisdiction to entertain this case, in the absence of a rating by the Veterans' Bureau. The court below held that the act confers such jurisdiction; it being conceded that, if the court has such power, there was a disagreement within the terms of section 19 of the federal statute. As said in the government brief: "The jurisdiction of the District Courts generally in cases founded upon war risk insurance, when a disagreement exists, is not here challenged."

Section 306, to which reference has been made, provides in part as follows:

"The bureau is authorized to make provisions in accordance with regulations, whereby the payment of premiums on yearly renewable term insurance and United States government life insurance (converted insurance) on the due date thereof may be waived and the insurance may be deemed not to lapse in the cases of the following persons, to wit: (a) Those who are confined in hospital under said bureau for a compensable disability during the period while they are so confined; (b) those who are rated as temporarily totally disabled by reason of any injury or disease entitling them to compensation during the period of such total disability and while they are so rated; (c) those who, while mentally incompetent and for whom no legal guardian had been or has been appointed, allowed or may allow their insurance to lapse while such rating is effective during the period for which they have been or hereafter may be so rated, or until a guardian has notified the bureau of his qualification, but not later than six months after appointment as guardian, the waiver in such cases to be made without application and retroactive when necessary: Provided, that such relief from payment of premiums on yearly renewable term insurance on the due date thereof shall be for full calendar months, beginning with the month in which said confinement to hospital, temporary total disability rating, or in cases of mental incompetents for whom no guardian has been appointed with the month in which such rating or mental incompetency began or begins and ending with that month during the half or major fraction of which the person is confined in hospital is rated as temporarily totally disabled or had or has no legal guardian while rated as mentally incompetent or until a guardian has notified the bureau of his qualification, but not later than six months after appointment as guardian. * * * *"

In its interpretation of this section we think the court below was in error. An analysis of its terms indicates the purpose to confine its application to cases that have been rated by the bureau. Therefore, in the ab-

sence of such rating, or until such rating is made, the provisions of the section do not attach. The rights of those who, while mentally incompetent and without legal guardian, have allowed or may allow their insurance to lapse, are saved by the provision that such rating may thereafter be made. The word "allowed," following the word "appointed" in clause C of the section, clearly, in our judgment, applies to all of the preceding classes. This legislation having been enacted for the express purpose of creating this new class C, it seems unreasonable that the language following next after the definition of that class should not be held to have application to it, and, if so, a rating is clearly demanded as a condition precedent to waiver of the lapse by the government. The language of the proviso supports this view.

"That such relief from payment of premiums on yearly renewable term insurance on the due date thereof shall be for full calendar months, beginning * * * in cases of mental incompetents for whom no guardian has been appointed with the month in which such rating or mental incompetency began or begins and ending with that month during the half or major fraction of which the person is confined in hospital is rated as temporarily totally disabled or had or has no legal guardian while rated as mentally incompetent."

[4] This construction is further supported by committee reports when this legislation was before the Congress. To these reports we are permitted to refer. Duplex Printing Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196. The report to the House of March 22, 1923, says in part:

"Section 8 amends section 409 of the present law, whereby the payment of premiums on yearly renewable term insurance and United States government life insurance (converted insurance) on the due date thereof may be waived and the insurance may be deemed not to lapse in the cases of those who while mentally incompetent and for whom no legal guardian had been or has been appointed allowed or may allow their insurance to lapse while such rating is effective during the period for which they have been or hereafter may be so rated, the waiver in such case to be made without application and retroactive where necessary."

The report of the committee on World War veterans' legislation, submitted on April 28, 1924, contains the following:

"32. Waiver of the payment of premiums when due for persons confined in hospitals for compensable disability, for persons rated as temporarily totally disabled, and for persons rated as mentally incompetent during the period for which they have no legal guardian and not later than six months where a guardian has been appointed, are to be made without application and may be allowed retroactively."

This recommendation related to section 306 of the World War Veterans' Act which superseded section 409 of the War Risk Insurance Act. Identical language was used with respect to the same subject-matter in the report of the committee on World War veterans' legislation of May 15, 1924. It will thus be seen that such waiver of premiums was intended by Congress to apply only to persons who had been or who thereafter might be rated as mentally incompetent. Investigation by the Veterans' Bureau is as necessary in cases arising under section 306 as in those demanding belated compensation for the purpose of keeping policies in force, based upon section 305 of the same act. Concerning the latter, in Armstrong et al. v. United States, 16 F.(2d) 387–389, we said:

"The entire act contemplates that the rating shall be made and the compensation allowed and established by the bureau through the machinery provided for that purpose. The consideration of these matters involves, not only technical knowledge, but exacting investigation and computation. The application of the schedules and the determination of the compensation due cannot well be made except through the elaborate organization provided by law within the Bureau itself. It is on this account that exclusive control over matters of compensation are lodged in the Bureau. * * * The decision of the director upon a right to compensation claimed under the act is final and conclusive and not subject to judicial review, at least unless the decision be wholly unsupported by evidence, wholly dependent upon a question of law, or clearly arbitrary or capricious. This is the precise language of the Supreme Court in Silberschein v. United States, 266 U. S. 221, 45 S. Ct. 69, 69 L. Ed. 256."

In our judgment, therefore, persons seeking to avail themselves of the provisions of section 306 are required to procure a rating from the bureau as a condition precedent to recovery in the courts.

[5] Ordinarily this would dispose of the case in favor of the government, and require reversal. We think, however, that in the state of the record this result should not follow. It is conceded that the District Court had

general jurisdiction of the parties and of the subject-matter. The jurisdictional question raised is not one which goes to the court as a federal court, but concerns what is termed a condition precedent to the relief sought. In 15 Corpus Juris, 845, § 164, the rule is thus stated:

"An absolute want of jurisdiction of the subject-matter or cause of action cannot be waived, nor can the doctrine of equitable estoppel be invoked to confer a jurisdiction on a tribunal which has not jurisdiction of the subject-matter. But where the court has general jurisdiction of the subject-matter a lack of jurisdiction of the particular case may be waived by failure to take timely and specific objections, or an invocation of or submission to the jurisdiction may raise an estoppel to deny such jurisdiction. So, also, the parties may, either expressly or by their conduct, waive objections to remedies pursued in courts having jurisdiction of the subject-matter."

In Beyer v. Le Fevre, 186 U. S. 114–118, 22 S. Ct. 765, 767 (46 L. Ed. 1080), Mr. Justice Brewer said:

"Whatever might have been the conclusion if the defendants had stood upon their challenge of the jurisdiction, the agreement of the parties to submit certain questions to a jury, the trial before the jury and the stipulation for returning the testimony there taken to the equity court for consideration by the judge thereof, must be held a waiver of the objection to the jurisdiction."

[6] In Cincinnati Equipment Co. v. Degnan (C. C. A. 6) 184 F. 834–841, it was held that objection to jurisdiction in equity, for instance, must be taken before the case has been entered upon the merits. In the pleadings, before the trial of this case began, no objection to the jurisdiction of the court was interposed. It appears that during the trial defendant in error did seek to procure for the deceased soldier from the Veterans' Bureau a rating of mental incompetency. The bureau ruled to the contrary. Thereafter, at the trial the following appears in the record:

"Mr. Guffy (for the government): 'Defendant now offers in evidence Defendant's Exhibit 13, which is a record of the action of the Director of the United States Veterans' Bureau, rating (Police) Edwards, husband of the plaintiff, as not mentally incompetent at any time prior to his death.

"Mr. Friedman (for plaintiff): Defendant's Exhibit 13 is objected to as incompetent, irrelevant, and immaterial, it being a rating that was made subsequent to and while this suit was pending, and was a rating made on a submission made to the United States government, on the express representation that such a submission would not prejudice or interfere in any way with the rights of the plaintiff in this action as they existed at the time such submission was made. I might add to that that this case was called for hearing some time last summer, and a lady was sent from Washington, and it was on her suggestion that we submitted the evidence we had in the form of affidavits to the bureau, and that it would in no manner prejudice the case before the court, and it was in compliance with that suggestion that we submitted them.

"Mr. Epperson, Assistant United States Attorney (for the government): The law had been changed after this action was started, whereby desertion was not necessarily a cause for the defeat of the insurance. On account of the change of that law, as we all considered it at that time, the plaintiff in this action would have no right to continue this case without first submitting to the bureau their evidence for a rating and in endeavoring to get what they wanted there. We could have pleaded that situation in bar —that is, the fact that the case had not been submitted to the bureau—in bar of this action; but the government was willing to waive that, and, if the plaintiff would convince the bureau that Polete Edwards was incompetent from the time of his alleged desertion, then the bureau would pay it, and that would end this litigation, but that, if the bureau decided otherwise, then we would not plead the bar, but would go ahead with this litigation."

We regard this concession by counsel for the government to be a complete waiver of the failure of plaintiff in error to procure a rating from the bureau, either before the suit was brought or thereafter. The District Court having general jurisdiction of the parties and of the subject-matter, this requirement of the statute is subject to waiver. W. C. Tucker, Petitioner, v. Acel C. Alexander, Collector of Internal Revenue, 48 S. Ct. 45, 72 L. Ed. ——, decided November 21, 1927. The government consented, under circumstances which fully warranted that action, to permit the matter to be adjudged by the District Court independently of any action by the bureau.

For this reason, we conclude that the judgment below should be affirmed; and it is so ordered.